# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

ANNE C. PATIN
PARTNER
(212) 574-1516
patin@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

901 K STREET, NW
WASHINGTON, DC 20001
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

July 11, 2019

**VIA ECF**

Honorable Barbara C. Moses
United States Magistrate Judge
U.S. District Court for the Southern District of New York
40 Foley Square, Courtroom 1506
New York, New York 10007

> Re: Cardaci v. Van Eck Associates Corporation, et al.
> Case No. 18 Civ. 09705 (RA) (BCM) (S.D.N.Y.)

Dear Magistrate Judge Moses:

We represent Van Eck Associates Corporation ("VanEck") and Jan van Eck ("Mr. van Eck") (collectively "Defendants"). In accordance with Judge Abrams' Rule 3, we respond to the letter dated July 8, 2019 (the "July 8 Letter") submitted by plaintiff Catherine Cardaci ("Plaintiff") requesting the Court to compel Defendants to produce certain documents unrelated to and far afield of her allegations in the Amended Complaint (Dkt. No. 19) that she personally was discriminated against by Defendants.[1]

Defendants have responded to Plaintiff's 117 Document Requests and 19 Interrogatories by retrieving and searching nearly 600,000 emails and documents and producing more than 4,671 pages of documents.[2] That effort was time consuming and expensive.

Not only does Plaintiff seek to significantly expand the timeframe for discovery beyond any allegation in her Amended Complaint, which would exponentially compound Defendants' obligations without basis, Plaintiff also seeks documents regarding compensation and performance and the personnel files of approximately 50 other VanEck employees who were *not* similarly situated to Plaintiff. Plaintiff was the only Chief Marketing Officer until she was advised that her at-will employment was terminated on August 16, 2018 for insufficient performance. Plaintiff was told of her insufficient performance in February 2018 (during her 2017 annual review) and July 2018 (her 2018 mid-year review) in addition to ongoing informal critiques that the documents produced clearly show. Plaintiff understood in February 2018 that her performance was viewed as unsatisfactory and so told at least two managers in the Marketing department (Laura Jones and Anthony Vitalone).

Defendants object to these document requests and other document requests because they are unrelated to Plaintiff's claims that she: (1) received unequal pay as compared to her predecessor, Harvey Hirsch (*see* Amended Complaint ¶ 51); (2) was terminated because her grand jury service was extended (*id.* ¶¶ 97-98); and (3) was subjected to unspecified gender discrimination and retaliation.

---

[1] Judge Abrams referred this discovery dispute after Plaintiff had submitted her July 8 Letter.
[2] Rolling productions of documents responsive to Plaintiff's initial requests are ongoing. Plaintiff also served a Second Request for Production of Documents on June 14, 2019.

Honorable Barbara C. Moses
July 11, 2019
Page 2

Plaintiff does not allege a pattern-and-practice discrimination claim. Plaintiff alleges that Mr. Hirsch was her sole comparator. Defendants have produced, and have agreed to produce additional documents going back as far as 2007, showing Mr. Hirsch's compensation and performance. Nevertheless, Plaintiff wants to comb through thousands of documents and personal information regarding dissimilar VanEck employees that have no bearing on Plaintiff's claims. The task of retrieving and reviewing tens of thousands of additional emails and documents would not be proportional to the needs of the case and would impose an unwarranted burden and expense on Defendants, who already have incurred substantial expense in responding to Plaintiff's discovery.[3]

***1. Time Frame:*** Defendants object to retrieving, reviewing and producing documents dated before November 2014 (the date of Plaintiff's hire) and after September 18, 2018, the last day following the termination of Plaintiff's employment that she had to accept a generous separation package (approximately $550,000) offered to her by VanEck. *See* Ex. 2 (Defendants' Responses and Objection to Plaintiff's First Request for the Production of Documents), at 5. Documents before November 2014 and beyond September 18, 2018 do not bear on Plaintiff's compensation, the terms and conditions of her employment, her termination, or Defendants' reasons for terminating her employment. Defendants have made two limited exceptions to resolve disputes with Plaintiff. Defendants have produced documents related to Mr. Hirsch's compensation in 2013 and 2014, and have agreed to produce documents related to his compensation and performance from 2007 until the date he retired. Defendants also produced documents from various employees' personal devices through and including December 31, 2018 based on counsel's representation that Plaintiff is entitled to see if any of them were communicating about Plaintiff or this case.

***2. Other Employees' Compensation, Performance Reviews and Personnel Files***: Defendants have objected to Plaintiff's requests for documents related to compensation and performance and the personnel files[4] for approximately 20 senior executives who had completely different roles and responsibilities at VanEck, as well as compensation and performance documents for all marketing department personnel (approximately 29 people). *See* Ex. 2, Requests Nos. 9, 11, 13, 16, 18, 24, 26, 72 and 97. Plaintiff alleges that Mr. Hirsch was her only comparator. Plaintiff does not allege that she received less pay than "C-Suite"[5] executives, marketing employees, or non-marketing employees. None of them performed similar work, requiring similar skill, effort and responsibility. For example, other senior employees include the General Counsel, the Chief Operating Officer, Portfolio Managers of investment funds and the Head of Human Resources, as well as others who have completely different roles and responsibilities than Plaintiff. The marketing department reported to Plaintiff, so she is not similarly situated to the marketing staff. What others may have been compensated and how their compensation may have compared to Plaintiff have no bearing on Plaintiff's claim that she received unequal pay as compared to Mr. Hirsch, or her other claims.[6]

---

[3] To the extent Plaintiff cites cases in support of her position, they are inapposite as set forth in Defendants' response to Plaintiff's deficiency letter which is attached to the July 8 Letter as Exhibit C, and attached hereto for ease of reference as Exhibit 1.

[4] Plaintiff's offer to limit her request for personnel files to "performance, hiring, discipline, promotion, compensation and termination" would increase, not decrease, the burden on Defendants. Further, there are privacy concerns with producing documents relating to individuals who are not parties to this lawsuit. Accordingly, Defendants object to this purported compromise. *See* July 8 Letter, at n.11.

[5] Defendants have objected to Plaintiff's fictitious term, "C-Suite," because they never used any such term.

[6] Plaintiffs do not have free rein to seek discovery throughout an employer's work force. *See, e.g., Bellinger v. Astrue*, No. CV-06-321 (CBA), 2009 U.S. Dist. LEXIS 71727, at *4-17 (E.D.N.Y. Aug. 14, 2009) (denying motion to compel answers to interrogatories regarding comparators in single-plaintiff Title VII gender discrimination equal pay case). Rather, "courts must impose reasonable limits on the scope of permissible discovery based upon the specific facts of particular cases." *Id.* at *16-17. Even when disparate treatment is alleged "the comparisons underlying claims of disparate treatment must be carefully drawn." *See also Duck v. Port Jefferson Sch. Dist.*, No. 07CV2224 (ADS) (WDW), 2008 U.S. Dist. LEXIS 39695, at *8-9 (E.D.N.Y. May 14, 2008) (citations

Honorable Barbara C. Moses
July 11, 2019
Page 3

***3. Compensation and Performance Reviews of Female Employees and their Potential Comparators***: Plaintiff does not make any factual allegation that she was paid less than Mr. Hirsch because other female employees in other departments at VanEck with different responsibilities and different job functions were paid less than a supposed male comparator. Nor does Plaintiff make any factual allegation that any female was paid less than a male comparator (e.g., who, how much, what year(s)), or that any female complained to HR (none did) that she was paid less than a male comparator. Plaintiff only alleges that she has an unspecified understanding that this may have happened. None of these requests bear on Plaintiff's claims that *she* – not others – was subjected to discrimination. *See* Ex. 2, Request Nos. 38-57 and 76-77.

***4. "Informal Meetings"***: Plaintiff seeks documents related to "informal meetings" between Mr. Van Eck and his direct reports to somehow show that Plaintiff was treated differently than others. It would not be possible to search for documents related to "informal meetings" given that it is a vague term and would require the review of countless emails and calendar entries that could be responsive. This would be a tremendous burden on Defendants both in terms of time and resources. Documents related to "informal meetings" with others are therefore outside the scope of discovery and Defendants stand by their objection. *See* Ex. 2, Request No. 78.

***5. Plaintiff's Successor***: Defendants' promotion of Kristen Capuano, a woman, to the head of the marketing department, months after Plaintiff's employment ended, has no bearing on Plaintiff's claims. Documents concerning Ms. Capuano's promotion, performance during her 12-year career with VanEck in the Marketing Department, and her compensation would not be relevant to Plaintiff's allegations, which do not include any claim that Plaintiff was discriminated against because Ms. Capuano was promoted. *See* Ex. 2, Request No. 98.

***6. Search Terms***: Two weeks after Defendants' counsel had already formulated search terms and commenced email and document retrieval and review, Plaintiff's counsel sent proposed search terms. Notably, Plaintiff does not contend that there are gaps in the more than 4600 pages of documents Defendants have produced. Defendants' counsel explained that they were not going to deploy Plaintiff's search terms because they would duplicate what was already done. Plaintiff's search terms were largely the same and for the same custodians. Plaintiff is not entitled to audit Defendants' discovery efforts conducted in good faith, especially where, as here, there is no suggestion that expected documents were not produced. Duplication of Defendants' efforts already undertaken is not necessary and would be time consuming and expensive imposing additional undue burden on Defendants.

Broad and liberal construction of discovery under the Federal Rules is not a license to require production of documents about other dissimilar employees or other attenuated matters that have nothing to do with Plaintiff's claims. Requiring Defendants to retrieve and review tens of thousands of additional emails and documents would not be proportional to the needs of the case, and would impose an unwarranted burden and expense on Defendants. Accordingly, Plaintiff's request to compel should be denied.

Respectfully submitted,

/s/
Anne C. Patin

SK 02130 0022 8325597

---

omitted) (denying the production of certain employee personnel files, noting that the plaintiff must show she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself"). *Cf. Pena v. Bd. of Elections*, 16-CV-00427 (VEC) (BCM), 2017 U.S. Dist. LEXIS 17392, at *26 (S.D.N.Y Feb. 6, 2017) (holding that to be similarly situated, colleague must be subject to same supervisory authority, engaged in the same conduct, held to same standards and held comparable positions).