# Exhibit 1

# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

ANNE C. PATIN
PARTNER
(212) 574-1516
patin@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

901 K STREET, NW
WASHINGTON, DC 20001
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

June 20, 2019

**BY EMAIL**

Valdi Licul, Esq.
Yannick Grant, Esq.
Vladeck, Raskin & Clark, P.C.
565 Fifth Avenue, 9th Floor
New York, New York 10017

Re: Cardaci v. Van Eck Associates Corporation, et al.
Case No. 18 Civ. 09705 (RA) (S.D.N.Y.)

Dear Valdi and Yannick:

We are available to discuss at a mutually convenient date and time your letter dated June 3, 2019 concerning VanEck's[1] production of documents and responses and objections to Cardaci's document requests and interrogatories (the "Letter"). We can be available on June 25 or 27. Please let us know what works for you.

**VanEck's Responses to Cardaci's Document Requests and Interrogatories**

VanEck promptly responded to Cardaci's 117 document requests and has produced 4,671 pages of documents. VanEck also promptly responded to Cardaci's interrogatories.

VanEck made, when appropriate, specific objections – not boilerplate objections – and explained them in the responses to each definition, instruction, document request and interrogatory.

To facilitate the anticipated meet and confer call, we note the following:

Cardaci's Amended Complaint asserts four (4) claims: (1) she received unequal pay as compared to her predecessor Harvey Hirsch (¶ 51); (2) she was terminated because her grand jury service was extended; (3) she was subjected to unspecified gender discrimination; and (4) she was retaliated against.

---

[1] VanEck refers to both Van Eck Associates Corporation and Jan van Eck, unless otherwise indicated.

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 2

VanEck denies Cardaci's allegations noting, among other things (as documents VanEck has produced show): (1) Cardaci's salary was $50,000 more than Hirsch's ($250,000 vs. $200,000); (2) Cardaci's employment ended for insufficient performance, which decision was made in July 2018, and communicated to Cardaci on August 16, 2018, because Jan van Eck and Megan Rapple, Head of Human Resources, were not together in the office until then; and (3) Cardaci never filed any complaint about discrimination concerning herself or others with Human Resources (or Bruce Smith for that matter), and no adverse employment action was taken based on any (non-existent) protected activity. Further, Cardaci enjoyed the same terms and conditions of employment as everyone else, and was not excluded from any event or conference because of her sex.

**The Alleged Deficiencies**

In Section I of the Letter, Cardaci takes issue with VanEck's specific objections to Cardaci's definitions and instructions.

I. A.1.          Specific Objections. VanEck detailed its specific objection to each document request and interrogatory. No boilerplate or improper objections were made.

VanEck objected to "Request Nos. 11, 13, 16, 18, 24, 26, 33, 35-57, 66, 68, 69, 72, 73, 76-78, 84, 97 and 98 because they concern matters that are far afield and years away from Cardaci's claims that she personally was discriminated and retaliated against. Plaintiff alleges (1) she received unequal pay as compared to her predecessor, Harvey Hirsch, the former Chief Marketing Officer, (2) her employment was terminated because her grand jury service was extended, and (3) she was retaliated against for supposedly complaining about bias-related issues other women – not Plaintiff herself – experienced on the job and which are unrelated to her equal pay and termination claims." *See* Defendants' Responses and Objections to Plaintiff's First Request for the Production of Documents, Specific Objection, paragraph 8.

VanEck noted in its specific objection that "Plaintiff alleges that Mr. Hirsch was her only comparator. Plaintiff does not allege that she received less pay than "C-Suite," marketing or non-marketing employees who performed equal work or jobs requiring the same or equal skill, effort and responsibility. What others may have been compensated and how their compensation may have compared to others (not to Plaintiff) have no relevance to Plaintiff's claim that she received unequal pay as compared to Mr. Hirsch. Further, these Requests seek documents that have no bearing on Plaintiff's retaliation claim and thus are irrelevant. On these grounds, among others, Defendants object to Request Nos. 11, 13, 16, 18, 24, 26, 38-57, 66, 68, 69, 72, 73, 76-78, 84, 97 and 98." *Id. See also* Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories, Specific Objections 1 and 3.

VanEck also explained in its specific objection that it objects to "Requests 33 and 35-37 because, among other reasons, (1) there were no complaints by others to VanEck's Human Resources (HR) department concerning (a) requests for leaves, flexible work arrangements, maternity and parental leave, or (b) reduced responsibilities after returning from maternity leave, and (2) such non-existent complaints by others would have nothing to do with Plaintiff's claims

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 3

that she received unequal pay as compared to Mr. Hirsch, that her employment was terminated because her grand jury service was extended, or that she was retaliated against." *Id.*

In short, broad and liberal construction under the Federal Rules is not a license to require production of documents about others that have nothing to do with Cardaci's claims that she was discriminated against by VanEck.[2]

VanEck's counsel retrieved and searched through nearly 600,000 emails and documents in responding to Cardaci's document requests. VanEck did not undertake a search for documents responsive to these requests because the requested documents are not relevant to Cardaci's claims that she was discriminated against by VanEck, would not be proportional to the needs of the case, and would impose an unwarranted burden and expense.

   I. B. 2.   Documents Not Withheld. VanEck has not withheld documents responsive to requests regarding Cardaci's claim that she was personally discriminated against by VanEck. To the extent that Defendants objected to certain requests, VanEck has not undertaken to search for such documents because they are not relevant to Cardaci's claims as alleged in her Amended Complaint.

   I. C. 3.   Scope. VanEck has not withheld documents responsive to requests regarding Cardaci's claims that she was personally discriminated against by VanEck. Cardaci contends that she is entitled to broad discovery that does not bear on her claims that VanEck discriminated against her. The two cases Cardaci cites in n.5 of the Letter – which are not employment cases[3] -- do not support Cardaci's position. In *Oppenheimer Fund, Inc. v. Sanders*, the Court held that the defendants were under an obligation to assist with identifying class members who were investors in an investment fund, not discovery in an employment discrimination action. *See* 437 U.S. 340, 351 (1978).[4] Similarly, in *State Farm Mutual Automobile Insurance Company v. Fayda*, the plaintiff insurance company sought bank records and tax returns

---

  [2]  *See In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" (quoting *Broadway & Ninety Sixth St. Realty Co. v. Loew's, Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y. 1958))); *Feltenstein v. City of New Rochelle*, No. 14-cv-5434 (NSR), 2018 U.S. Dist. LEXIS 138393, at *8-9 (S.D.N.Y. Aug. 8, 2018) (citing *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004)) ("While Rule 26(b)(1) provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses."). *See also Surles v. Air France*, No. 00 Civ. 5004 (RMB)(FM), 2001 U.S. Dist. LEXIS 10048 (S.D.N.Y. July 19, 2001) (holding in an employment discrimination case that discovery requests cannot be based on pure speculation or conjecture).

  [3]  The employment case that Plaintiff does cite in n.6 of the Letter, *E.E.O.C. v. Beauty Enterprises, Inc.*, was brought on behalf of a group of employees. *E.E.O.C. v. Beauty Enters.*, No. 3:01CV378 (AHN), 2005 U.S. Dist. LEXIS 25869, at *2-4 (D. Conn. Oct. 25, 2005).

  [4]  In another example of how discovery can apply outside the pleadings, the Court identified discovery related to jurisdiction and venue, not discovery of other matters of the type Plaintiff seeks here. *Oppenheimer*, 437 U.S. at 350 n.13.

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 4

to demonstrate that the defendants paid kickbacks for access to patients who submitted fraudulent claims and that their reliance on those patients for income would demonstrate motive, as well as documents related to defendants' activities at other medical facilities to determine whether the same fraudulent conduct was occurring there. *See* No. 14 Civ. 9792 (WHP) (JCF), 2015 U.S. Dist. LEXIS 162164, at *9-20 (S.D.N.Y. Dec. 3, 2015).[5]

      I. D. 4.      <u>Timeframe</u>. VanEck produced documents for the period from November 10, 2014 (the date Cardaci commenced employment with VanEck), as well as documents regarding her hiring (Request 2) and compensation for Hirsch from November 1, 2013 (Request 58), the date specified in Cardaci's instruction 16. VanEck searched for and produced documents through September 18, 2018, the last day following the termination of her employment that Cardaci had to accept the separation package that had been offered to her, which she declined.[6]

      Van Eck also explained that it objected to undertaking a search for pre-hire and post-termination time periods because any such documents are not relevant to Plaintiff's claims that she personally was discriminated and retaliated against and, thus, are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the importance of the discovery in resolving Cardaci's claims that she personally was discriminated and retaliated against by VanEck, and the burden and expense of such discovery would outweigh its likely benefit.

      As for Hirsch's compensation, job performance and qualifications, VanEck produced documents that reflect the same.

      I. E. 5.      <u>Senior Executive Definition</u>. VanEck objected to Cardaci's fictitious term, "C-Suite," because no such term was used by VanEck. VanEck did not withhold documents because Cardaci coined this inapplicable "C-Suite" term.

---

[5]     *Fayda* also stands for the proposition that Fed. R. Civ. P. 26(b)(1) allows for discovery related to "the <u>actual</u> claims and defenses involved in the action, not discovery that may lead to new claims that are not already identified in the pleadings in the absence of 'good cause'." *See* Comments to 2000 Amendments to Fed R. Civ. P. 26(b)(1); *Fayda*, 2015 U.S. Dist. LEXIS 162164, at *8 n.3 (citing *Lin. v. Benihana National Corp.*, No. 10 Civ. 1335, 2010 U.S. Dist. LEXIS 107839, at *7 (S.D.N.Y. Oct. 5, 2010)).

[6]     The cases Cardaci cites in the Letter n.8 support VanEck's position or are clearly distinguishable. *See Gaul v. ZEP Mfg. Co.*, No. 03-2439, 2004 U.S. Dist. LEXIS 1990, at *5 (E.D. Pa. Feb. 4, 2004) (ordering discovery for five (5) years preceding date claim was filed); *Langenbach v. Wal-Mart Stores, Inc.*, No. 12-CV-1019, 2013 U.S. Dist. LEXIS 114820, at *2-3 (E.D. Wis. Aug. 14, 2013) (allowing discovery for two (2) years after employment ended where case was filed after employment ended); *Chan v. NYU Downtown Hosp.*, No. 03 Civ. 3003 (CBM), 2004 U.S. Dist. LEXIS 16751, at *6 (S.D.N.Y. 2004) (allowing discovery for two (2) years prior to hiring to obtain other claims of sexual harassment); *Bujnicki v. Am. Paving & Excavating, Inc.*, No. 99-CV-0646S(Sr), 2004 U.S. Dist. LEXIS 8869, at *30 (W.D.N.Y. Feb. 25, 2004) (allowing statistical discovery for similarly situated employees for two (2) years prior to claims of discrimination and two (2) years subsequent to obtain discovery of other complaints); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (prior retaliatory acts against plaintiff were subject to discovery but no time frame specified).

   I. F. 6.   <u>Personnel File Definition</u>. VanEck produced Cardaci's personnel file. VanEck did not withhold documents because Cardaci concocted an unintelligible definition of "Personnel File."

   I. G. 7.   <u>Search Terms</u>. VanEck has not "mount[ed] various objections to Cardaci's proposed search terms." We explained that your search terms arrived two weeks after Cardaci's document request and after we had formulated search terms and commenced the search and retrieval of emails. We were not going to duplicate the effort and retrieve for a second time the same emails under your search terms.

   I. H.8.   <u>Personal Devices</u>. As a registered investment adviser, VanEck is required to and maintains emails, Bloomberg emails and Bloomberg instant messaging, including from company-issued or personally-owned devices. They would be maintained, assuming any company-issued or personally-owned device was used. Any such documents from company-issued or personally-owned devices would have been produced. We understand that there were no emails or texts sent by Jan Van Eck from a personally-owned device that would be responsive to any of Cardaci's requests.

   VanEck's Electronic Communications Policy "prohibits the use of all electronic communication for business purposes unless such communication can be appropriately retained for regulatory review." It further provides that, "[A]ll emails, including Bloomberg emails and Bloomberg instant messages (IMs) to and from all Adviser-provided email addresses" are retained. The EC policy specifically prohibits (1) "the use of instant messaging (except for Bloomberg instant messaging) for business purposes" and (2) "the use of text messaging for business purposes." Additionally, "use of certain electronic communication methods, such as text messaging and personal email access from adviser-owned devices, such as Blackberries or cell phones may be granted by the Chief Compliance Officer upon specific written request. If granted, does not provide a waiver of the policies stated above in that such methods may not be used for electronic communication of business related matters."

   In Section II of the Letter, Cardaci disputes VanEck's objections to specific requests.

   II. A   <u>Compensation for Senior Executives</u>: Requests 11, 26, 73. VanEck produced documents regarding Cardaci and Hirsch, her predecessor and only comparator alleged in her Amended Complaint (see ¶ 51). No "potential comparator" is referenced in the Amended Complaint as suggested in the Letter.[7]

   VanEck also produced documents showing the compensation process, including the annual McLagan market data surveys in determining overall compensation. *See, e.g.,* VE001750 and VE001788 in which Megan Rapple stated to Cardaci that, "[M]erit bonus is based on individual performance and accomplishment of performance goals during the year." VanEck produced

---

   [7]  Cardaci cites *Oppenheimer* and *Fayda* at n.22 of the Letter, but these cases are not applicable here. *See supra* at 3.

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 6

documents noting that its "goal is to provide compensation that meets the market median (50th percentile for both salary and total compensation when employees are fully proficient and consistent by meeting expectations. Employees consistently performing above expectations and proficient in their role may be rewarded with higher compensation (not to exceed 75th percentile)." *Id.*

Cardaci's requests for compensation information about senior executives in other departments with different responsibilities and different job functions are not relevant or reasonably calculated to lead to other matters bearing on Cardaci's claims (or VanEck's defenses). That is particularly so here because there is no allegation in Cardaci's Amended Complaint that she received less compensation as compared with other senior executives, who are not similarly situated to her in any event,[8] because of her sex. Cardaci negotiated her employment agreement, which included a salary of $250,000 – $50,000 more than Hirsch – and guaranteed bonuses of $150,000 and $250,000 that were paid in 2015 and 2016 respectively.[9]

II. B.         Exceptions to Compensation Policy: Requests 9, 10, 12, 17. VanEck produced documents regarding its compensation process. VanEck does not have documents regarding exceptions.

II. C.         Senior Executive Performance Evaluations: Requests 13, 24. VanEck produced documents regarding its evaluation of Cardaci's performance. Cardaci's Amended Complaint does not allege that she was discriminated against in her compensation because senior executives in other departments with different responsibilities and different job functions received

---

[8] Cardaci was the sole Chief Marketing Officer. She was the head of an entire department and there was, and is, no other employee who arguably performed equal work or jobs requiring the same or equal skill, effort and responsibility, except for Hirsch. Cardaci has not alleged that there were any such comparators other than Hirsch. Accordingly, *Pitrolo v. County of Buncombe*, No. 1:06cv199, 2007 U.S. Dist. LEXIS 25370 (W.D.N.C. Apr. 4, 2007) (allowing plaintiff of large public employer discovery of comparators because she could not have known who such comparators were); *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, Civ. A. No. 09-261, 2009 U.S. Dist. LEXIS 95486 (W.D. Pa. Oct. 14, 2009) (allowing discovery of specific category of employees who processed payroll or accounts payable and therefore were similarly situated); and *Moll v. Telesector Res. Group, Inc.*, 760 F.3d 198, 203-04 (2d Cir. 2014) (ordering production of defendant's reduction in force documents), cited in the Letter at n.23, are inapplicable.

[9] Plaintiff mistakenly relies on inapposite cases that do not involve a plaintiff who alleges that she was paid unequally as compared to another employee. *See* Letter at n.24, *citing Fontenot v. Safety Council of Sw. La.*, No. 2:16-cv-00084, 2017 U.S. Dist. LEXIS 126447 (W.D. La. Aug. 9, 2017) (no discussion of facts or claims but discovery permitted on compensation factors to determine whether "system" was utilized to determine salaries); *Langenbach v. Wal-Mart Stores, Inc.*, No. 12-cv-1019, 2013 U.S. Dist. LEXIS 114820, at *8 (E.D. Wis. Aug. 14, 2013) (rejecting broad discovery to identify potential comparators and limiting discovery to comparable employees seeking FMLA leave); *Storves v. Island Water Assoc., Inc.*, No. 2:10-cv-274-FTM-36SPC, 2011 U.S. Dist. LEXIS 52979 (M.D. Fla. May 6, 2011) (no discussion of underlying facts); *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 255 (S.D.N.Y. 1999) (allowing statistical evidence to demonstrate disparate impact); *Manning v. Gen. Motors*, 247 F.R.D. 646, 653 (D. Kan. 2007) (permitting discovery of other employees to determine whether plaintiff was discriminated against on basis of race or disability given that all employees were subject to medical accommodation decisions made by medical officer).

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 7

more compensation than she did because of her sex. Cardaci's sole allegation on compensation is that Hirsch, her sole comparator, was paid more than she was.[10] For the same reasons noted in II. A above, such documents are not relevant, as well as objectionable for the reasons noted in VanEck's Specific Objection, paragraph 8.[11]

II. D.    Marketing Employee Compensation: Requests 16, 72. Cardaci's requests for documents concerning compensation received by as many as 29 subordinate employees in the marketing department over a period of four years are not relevant for the same reasons notes in II. A and II. C above, as well as in VanEck's Specific Objection, paragraph 8. To be clear, Cardaci has not alleged in her Amended Complaint that she was paid less compensation than employees in the marketing department because of her sex.[12]

II. E.    Leave Requests: Requests 33, 35, 36. VanEck produced documents concerning its leave policies and benefits. While Cardaci alleges – and VanEck denies – that she raised concerns about VanEck's leave policies and practices to Bruce Smith on February 3, 2015 based on a luncheon in December 2014, the documents VanEck produced show that the meeting was to consider two new positions in Active Marketing. *See* VE 004535 – VE 004567.

Moreover, Cardaci does not allege that her meeting on February 3, 2015 was a reason for the termination of her employment more than 3 ½ years later on August 16, 2018. On the contrary, Cardaci alleges in her Amended Complaint that her employment was terminated because her grand jury service was extended on August 7, 2018.

---

[10]    Cardaci's cited cases in the Letter at n.27 are not on point. *See Sasikumar v. Brooklyn Hosp. Ctr.*, No. 09 CV 5632 (ENV) (RML), 2011 U.S. Dist. LEXIS 46768, at *2 (E.D.N.Y. May 2, 2011) (claim that supervisor preferred West Indian subordinates, not that plaintiff made less than comparator); *Storves*, 2011 U.S. Dist. LEXIS 52979 (no discussion of underlying facts); *Gerstenfield v. Zale Del., Inc.*, No. 6:05-cv-1719-Orl-18DAB, 2006 U.S. Dist. LEXIS 57684, at *1 (M.D. Fla. Aug. 16, 2006) (age discrimination claim with no discussion of underlying facts); *Gorzynski v. JetBlue Airways Corp.*, No. 03-CV-0774E (SC), 2005 WL 8156622, at *5 (W.D.N.Y. Aug. 4, 2005) (plaintiff specifically alleged that other employees were discriminated against by her supervisor); *Goetz v. Samuel Aaron, Inc.*, No. 97-CV-6130 (ILG), 1998 U.S. Dist. LEXIS 9104, at *25-26 (E.D.N.Y. May 18, 1998) (age discrimination case where court granted personnel file discovery for others in plaintiff's position); *Byrnie v. Town of Cromwell Bd. Of Educ.*, 243 F.3d 93, 102-03 (2d Cir. 2001) (statistical evidence of large numbers of employee teachers in school district relevant to failure to hire claim).

[11]    *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741 (6th Cir. 2012) (*see* Letter at n.28), is distinguishable because it was an action involving violation of the Uniformed Services Employment and Reemployment Rights Act and race discrimination and retaliation claims and the court compelled documents relating to similarly situated comparators who had engaged in misconduct but were not terminated. 665 F.3d at 751.

[12]    *Forte v. Liquidnet Holdings, Inc.*, No. 14 Civ. 2185 (AT)(AJP), 2014 WL 12775220, at *3 (S.D.N.Y. Dec. 2, 2014) (ordering discovery of all sales representatives who were allegedly paid less than men) and *Knopfel v. Tech Data Corp.*, 225 F.R.D. 263, 265 (M.D. Fla. 2004) (plaintiff alleged that she was paid less than similarly situated men and sought documents related to three (3) specifically identified women), are inapposite because Cardaci alleges a single comparator (*see* Letter at n.30).

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 8

Additionally, for the same reasons noted in II. A and II. C above, as well as in VanEck's Specific Objections, paragraph 8, these document requests are not relevant to Cardaci's claims that she was discriminated against.

II. F.         <u>Cardaci/Smith Meeting</u>.  Request 37.  VanEck produced the documents relating to the meeting between Cardaci and Smith on February 3, 2015.  VanEck objected to Cardaci's mischaracterization of the meeting, not to producing documents about the meeting.

II. G.         <u>Female Employees/Potential Comparators</u>:  Request 38-57.  Cardaci does not make any factual allegation in her Amended Complaint that she was paid less than Hirsch because other female employees in other departments with different responsibilities and different job functions were paid less than their male comparators.  Nor does Cardaci make any factual allegation that any female was paid less than a male comparator (e.g., who, how much, what year(s)), but only that she has a conclusory, unspecified understanding.

Cardaci alleges in her Amended Complaint that she was paid less than Hirsch, her sole comparator, and not because anybody else may have been paid less than somebody doing a different job in a different department.

For the same reasons explained in II. A and II. C above, as well as in VanEck's Specific Objection, paragraph 8, VanEck did not search for documents sought in these requests.[13]

II. H.         <u>Alleged Differential Treatment</u>:  Requests 66, 68-69, 78, 84.  VanEck produced documents concerning invitations to social gatherings and professional conferences.  VanEck also produced documents regarding the regular meetings Jan van Eck had with Cardaci and others and meetings he had with Cardaci.  VanEck is not aware and did not locate documents where Jan van Eck sent updates to someone who may have missed a meeting.

VanEck objected to these requests because there is no allegation in Cardaci's Amended Complaint that she was paid less than Hirsch or that her employment ended based on any of these items.

II. I.         <u>Performance of Female Employees</u>:  Requests 76, 77.  Please see our response to II. G which is equally applicable to these requests.

II. J.         <u>Senior Executive Personnel Files</u>:  Request 97.  Cardaci does not allege in her Amended Complaint that she was paid less than Hirsch, her sole comparator, or that her employment ended because of what might be in some other senior executive's personnel file.

For the reasons explained in II. A and II. C above, as well as in VanEck's Specific Objection, paragraph 8, VanEck did not search for other senior executives' personnel files.  They are not relevant to Cardaci's claims that she was discriminated against by VanEck.

---

[13]   As set forth above, *Forte* and *Knopfel* do not apply here.  *See supra* n.12.

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 9

        II. K.        <u>Cardaci's Successor</u>. Request 98. VanEck's promotion of Kristen Capuano to the head of the marketing department, months after Cardaci's employment ended, is not relevant to Cardaci's claims that she was discriminated against by VanEck. See the reasons explained in II. A and II. C above, as well as in VanEck's Specific Objection, paragraph 8.

        II. L.        <u>Assets</u>: Request 106. Cardaci did not make any factual allegations in her Amended Complaint that could support an award of punitive damages. The mere assertion in a concluding wherefore paragraph is not a basis to obtain financial status information of each Defendant.

        II. M.        <u>Litigation Hold</u>: Request 108. VanEck's Compliance Manual, produced to Cardaci, sets forth VanEck document retention policy. Documents from the date of this threatened litigation are being maintained. Defendants' litigation hold is not discoverable because it is privileged. *Pearlstein v. Blackberry Ltd.*, 13 Civ. 07060, 2019 U.S. Dist. LEXIS 45098, at *47 (S.D.N.Y. Mar. 19, 2019).

        II. N.        <u>Social Media Postings</u>: Request 114. VanEck is not aware of and has not withheld documents concerning allegations by women of discrimination, harassment, assault, disparate treatment or other abusive conduct.

        VanEck objected to this request because there is no allegation in Cardaci's Amended Complaint that VanEck discriminated against her because of any social media posting. Nor does Cardaci's Amended Complaint make any factual allegation about any social media posting.

        In Section III of the Letter, Cardaci takes issue with certain of VanEck's Interrogatory Responses.

        III. A.        <u>Interrogatory 12</u>. VanEck is not aware that any written or oral complaint of discrimination has been made. VanEck denies that Cardaci made any report of discrimination. Nor does Cardaci allege in her Amended Complaint that she made a complaint of discrimination, except, supposedly, during a meeting with Bruce Smith on February 3, 2015, based on a luncheon from December 10, 2014. VanEck produced documents regarding the February 3, 2015 meeting which was not to, and did not, address alleged claims of discrimination of other women or Cardaci.

        III. B.        <u>Interrogatory 14</u>. VanEck objected to Interrogatory 14 because it misstates facts. Cardaci's employment was terminated on August 16, 2018. Cardaci was offered a generous separation package of over $500,000, which she declined. The persons involved in the decision to end Cardaci's employment are identified in response to Interrogatory 13 – Jan van Eck and Megan Rapple.

        III. C.        <u>Interrogatory 15</u>. VanEck responded to this interrogatory requesting who was involved concerning your August 30, 2018 letter. VanEck's response is not inadequate and speaks for itself.

Valdi Licul, Esq.
Yannick Grant, Esq.
June 20, 2019
Page 10

*   *   *

We look forward to discussing your June 3 letter and our responses, and hopefully to resolving, or at least narrowing, any issues regarding VanEck's responses to Cardaci's document requests and interrogatories.

Very truly yours,

Anne C. Patin

SK 02130 0022 8242764